1    **WO**

2

3

4

5

6                      IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9    Barbara Patterson,                    )
                                           )      No. CV 07-1476-PHX-PGR
10              Plaintiff,                  )
     v.                                     )      **ORDER**
11                                          )
     Dora Schriro, et al.,                  )
12                                          )
                Defendants.                 )
13   _____)

14

15          Currently before the Court is Defendant Dora Schriro's ("Schriro") Fed.R.Civ.P. 12(c)

16   Motion for Judgment on the Pleadings (Doc. 30) as to both Counts of Plaintiff Barbara

17   Patterson's Complaint (Patterson).[1] Ms. Schriro contends that the Complaint fails to attribute

18   to her any specific conduct.  Also before the Court is Defendant Schriro's Motion to Strike

19   Plaintiff's Response to Schriro's Judgment on the Pleadings on the grounds of untimely

20   filing.  (Doc. 42)  Plaintiff Patterson concedes that her Response was untimely filed but

21   nevertheless requests that the Court decide the Motion on its merits.[2]  The Court will now

22   _____

23          [1] The two counts include civil rights violations of inmate Aaron Patterson's Eighth
     and Fourteenth Amendments under the United States Constitution, pursuant to 42 U.S.C. §
24   1983.

25          [2] Untimeliness was not the only deficiency in Plaintiff's Response to Defendant
     Schriro's Motion for Judgment on the Pleadings.  Plaintiff's counsel is advised to review the
26   Local Rules of this Court. In particular, LRCiv 7.1(c).  Any further violations of the Local
     Rules will result in the Court striking the party's documents.  LRCiv 7.1(c) provides:
27          **Electronic Documents**. Documents submitted for filing in the ECF System shall be

1  consider the motions.

2  **A.    Background[3]**

3      Patterson's son Aaron Patterson ("Aaron") suffered from psychological issues

4  throughout his life.  On Mother's Day (May 8, 2005), while an inmate at Arizona Department

5  of Corrections ("ADOC") in the Maximum Security Unit ("SMU"), Aaron was not permitted

6  to visit with his mother due to his psychological condition.  Plaintiff alleges that this upset

7  her son.  On May 10, 2005, Aaron was stripped naked and placed in a solitary cell,

8  purportedly on suicide watch.  Patterson alleges that the regular checks that were to occur for

9  an inmate on suicide watch did not occur.

10      The facts alleged in the Complaint are that Aaron was considered a suicide risk by the

11  Department of Corrections and seriously mentally ill upon his arrival.  Consequently, he was

12  receiving mental health treatment from Co-Defendant Cooper, a psychology associate.  On

13  May 10, 2005, two days after Mother's Day, Co-Defendant Cooper placed Aaron on mental

14  health watch, which requires Aaron to be stripped down and to remain naked and to be

15  checked on every thirty minutes. On May 12, 2005, during regular intervals, Aaron was

16  observed breathing and was responsive at three intervals between 6:50 a.m. and 7:50 a.m.

17  At approximately 8:00 a.m., Dr. Grassman advised corrections officers that upon checking

18  on Aaron, he was unable to get a response.  Several officers arrived at Aaron's solitary cell,

19  all observing him lying unresponsive and naked on his concrete bed.  Other Defendants

20  _____

21  in a Portable Document Format (PDF). Documents which exist only in paper format shall be
22  scanned into PDF for electronic filing. **All other documents shall be converted to PDF**
23  **directly from a word processing program** (e.g., Microsoft **Word® or Corel**
    **WordPerfect®), rather  than created from the scanned image of a paper document.**
24  (Emphasis added).
        Although future violations will result in stricken documents and/or harsher sanctions,
25  the Court will nonetheless decide this motion on its merits.

26      [3] All background facts are undisputed and gleaned from the Complaint, unless
    otherwise noted.

27  - 2 -

attempted to get a response from Aaron by several different means, including the use of a water cannon.  The two nurse Defendants then observed shallow breathing but made no attempt to resuscitate Aaron and they did not remove him from his cell.  At approximately 8:36 a.m. Aaron was removed from his cell and taken to the medical unit where he was pronounced dead. The autopsy revealed that he had committed suicide by "shoving toilet paper into his mouth."

On May 15, 2007, Patterson filed the current civil rights Complaint alleging violations under the Eighth and Fourteenth Amendments of the United States Constitution, pursuant to 42 U.S.C. § 1983.  Both counts were alleged against specific correctional officers, as well as ADOC Director Dora Schriro.  Patterson  alleged that Aaron's death was caused, at least in part, because "[t]he utilization of SMU for psychologically disturbed inmates such as Aaron amounts to cruel and unusual punishment" in violation of Aaron's Eighth Amendment civil rights.

Defendants filed their Answer on September 4, 2007, which contained general denials to all of Patterson's factual allegations.  On January 15, 2008, the Court entered a Scheduling Order providing that  parties had until April 18, 2008 to file motions to amend pleadings, motions to join parties, and 12(b) motions. Patterson contends that because Defendants did not express specific concerns with the substance of her Complaint, she did not seek leave to amend her Complaint.  Plaintiff fails to recognize that Defendants are not responsible for advising Plaintiff on the substance or posture of her case.  In their Answer, Defendants provided denials to the allegations set forth in Plaintiff's Complaint thereby providing Plaintiff with notice of their respective positions.   From that point on, it was Plaintiff and her counsel's responsibility to move forward with the case as they deemed appropriate. Defendants do not bear the burden of fighting the Plaintiff's battle, as the Plaintiff is the master of her lawsuit.  On June 30, 2008, after all pleadings were filed, Defendant Schriro brought the present Motion for Judgment on the Pleadings (Doc. 30) in accordance with

1  Fed.R.Civ.P.12(c), challenging the sufficiency of Plaintiff's allegations against her in the
2  Complaint.

3  **B.    Discussion**

4      **1.    Fed.R.Civ.P. 12(c)**

5      Rule 12(c) provides that any party may move for judgment on the pleadings after the
6  pleadings are closed. Fed.R.Civ.P 12(c).  The pleadings are closed for the purposes of Rule
7  12(c) upon the filing of both the complaint and answer.[4] *Doe v. U.S.*, 419F.3d 1058, 1061
8  (9th Cir. 2005). "A judgment on the pleadings is properly granted when, taking all the
9  allegations in the pleadings as true, the moving party is entitled to judgment as a matter of
10  law." *Nelson v. City of Irvine*, 143 F.3d 1196, 1200 (9th Cir.1998); *Owens v. Kaiser Found.*
11  *Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir.2001). The standards governing a Rule 12(c)
12  motion for judgment on the pleadings are the same as those governing a Rule 12(b)(6)
13  motion to dismiss for failure to state a claim. *See Dworkin v. Hustler Magazine, Inc.*, 867
14  F.2d 1188, 1192 (9th Cir.1989); *Lonberg v. City of Riverside*, 300 F.Supp.2d 942, 945
15  (C.D.Cal.2004); *Lake Tahoe Watercraft Recreation Ass'n v. Tahoe Regional Planning*
16  *Agency*, 24 F.Supp.2d 1062, 1066 (E.D.Cal.1998).  To survive a motion to dismiss for failure
17  to state a claim, a plaintiff must allege "enough facts to state a claim to relief that is plausible
18  on its face." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007).

19      The Court in *Twombly* explained that a complaint is read in conjunction with Federal
20  Rule of Civil Procedure 8(a)(2) which requires a "showing" that the plaintiff is entitled to
21  relief, "rather than a blanket assertion" of entitlement to relief. *Id.* at 1965 n. 3. While blanket
22  assertions may provide a defendant with the requisite "fair notice" of the nature of a
23  plaintiff's claim, only factual allegations can clarify the "grounds" on which that claim rests.
24  *Id.* "The pleading must contain something more . . . than . . . a statement of facts that merely

25

26      [4] At the time Schriro's Motion for Judgment on the Pleadings was filed, the Complaint
27  and Answer had already been filed.

1  creates a suspicion [of] a legally cognizable right of action." *Id*. at 1965, quoting 5 C. Wright
2  & A. Miller, Federal Practice and Procedure, § 1216, pp. 235- 36 (3d ed.2004).

3      Patterson steadfastly maintains that her Complaint is sufficient because she identified
4  Schriro as the Department of Corrections director and alleged that the "utilization of SMU
5  for psychologically disturbed inmates such as Aaron amounts to cruel and unusual
6  punishment" thereby violating his civil rights. Despite Patterson's strong convictions, Schriro
7  argues that Patterson's Complaint wholly fails to attribute to her any specific facts amounting
8  to violations under 42 U.S.C. § 1983. The Court finds that it is evident from the face of the
9  Complaint that it includes no allegation that Aaron's "death was caused, at least in part, by
10  an ADOC policy approved or advanced by Ms. Schriro" or that the use of SMU *caused*
11  inmate Aaron's death. The Complaint, as it pertains to Schriro, simply *names* Schriro as the
12  Director of ADOC and states that she is named in this matter in her individual capacity as
13  it is used under 42 U.S.C. § 1983.

14      Moreover, Patterson argues that Schriro should have filed a Rule 12(b)(6) motion to
15  dismiss within the time line provided by the Court for Rule 12(b) motions instead of filing
16  a Rule 12(c) motion for judgment on the pleadings. However, after Schriro filed her Answer,
17  the pleadings had closed and thus, a motion for failure of the complaint to state a claim is
18  properly brought as a motion for judgment of the pleadings under Rule 12(c). *See* Rule
19  12(h)(1).  Rule 12(c) provides that a motion for judgment on the pleadings is properly
20  brought "[a]fter the pleadings are closed--but early enough not to delay trial." Fed.R.Civ.P.
21  12(c).

22      Patterson further alleges that she has been prejudiced by the timing of Schriro's
23  motion because she has engaged in "considerable discovery" and has taken numerous
24  depositions.  However,  after a cursory look at the docket, it is evident that Patterson served
25  no discovery demands and took no depositions *prior* to Schriro filing her motion for
26  judgment on the pleadings. Furthermore, all of the depositions she subsequently took were
27

of the remaining named Defendants, all of whom are alleged to have had actual contact with the deceased inmate at the time he was found unresponsive in his cell; Schriro had no such contact.

### 2.    Fed.R.Civ.P. 8

According to Rule 8 of the  Federal Rules of Civil Procedure, a Complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8. (a)(2). It is well established in the Ninth Circuit that all "material allegations of the complaint are taken as admitted and the complaint is to be liberally construed in favor of the plaintiff."  *Sherman v. Yakahi*, 549 F.2d 1287,1290 (9th Circuit 1977).   Recently, the Ninth Circuit reaffirmed the notice pleading policy of  Rule 8, explaining, "[t]his simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Alvarez v. Hill*, 518 F.3d 1152, 1157 (9th Cir. 2008) (quoting *Swierkiewick v. Sorema N.A.*, 534 U.S. 506, 512  (2002)).   However, it is critical to acknowledge that when addressing claims pursuant to 42 U.S.C. § 1983, such as those in the pending matter, the burden is higher than that of Rule 8.  To establish liability pursuant to 42 U.S.C. § 1983, a plaintiff must set forth facts that demonstrate how *each defendant caused or personally participated* in causing a deprivation of plaintiff's protected rights. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir.1981)(emphasis added); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir.1989).

### 3.    42 U.S.C. § 1983

Causes of action such as those asserted by Patterson, "for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States are provided by 42 U.S.C. § 1983. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th

1  Cir. 2006)[5](citing *West v. Atkins*, 487 U.S. 42, 48 (1988)); *Wood v. Ostrander*, 879 F.2d 583,

2  587 (9th Cir. 1989).

3        In her Complaint, Patterson named Schriro as a defendant in her individual capacity,

4  as opposed to her official capacity.  Thus, Patterson contends that by naming Schriro as the

5  Director of the Department of Corrections, in her individual capacity, and alleging that the

6  Department of Corrections has a policy of "utiliz[ing] SMU for psychologically disturbed

7  inmates" her allegations against Schriro are sufficiently pled.  In her Response, she further

8  argues that, as Director, the ADOC's policies and procedures are promulgated at Schriro's

9  request and direction.   As far as Patterson's inclusion of Schriro in her Complaint, she does

10  not allege any individual conduct on the part of Schriro, nor does she allege any wrongful

11  conduct on her part. (Doc. 2.) When a plaintiff names an official in her individual capacity,

12  the plaintiff is seeking "to impose personal liability upon a government official for actions

13  (s)he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). A

14  defendant is liable **only** if she "play[ed] an affirmative part in the alleged deprivation of

15  constitutional rights." *King v. Atiyeh*, 814 F.2d 565, 568 (9th Cir.1987)(emphasis added).

16  When a defendant who is a government official is named in a suit in an  individual capacity,

17  a plaintiff "must allege facts, not simply conclusions, that show that an individual was

18  personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d

19  1193, 1194 (9th Cir.1998). A 42 U.S.C. § 1983 complaint must set forth the specific facts

20  upon which the plaintiff relies in claiming the liability of each defendant. *Ivey v. Bd. of

21  Regents*, 673 F.2d 266, 268 (9th Cir.1982). Thus, to establish liability pursuant to 42 U.S.C.

22  § 1983, the plaintiff must set forth facts demonstrating how each individual defendant caused

23  or personally participated in causing a deprivation of plaintiff's protected rights. *Arnold v.

24  IBM*, 637 F.2d 1350, 1355 (9th Cir.1981); *Taylor*, 880 F.2d at 1045. Moreover, the plaintiff

25

26            

27        [5] Reversed and remanded on unrelated grounds.

must present a causal connection between a defendant named in its individual capacity and the conduct of which plaintiff complains. *See Hamilton v. Endell*, 981 F.2d 1062, 1067 (9th Cir.1992).

Plaintiff's Complaint (Doc. 2) raises two 42 U.S.C. § 1983 counts against multiple Defendants related to the suicide of inmate Aaron Patterson. As established, a 42 U.S.C. § 1983 complaint must allege specific facts upon which a plaintiff relies in claiming the liability of each defendant. *Ivey*, 673 F.2d at 268 (9th Cir.1982). Even a liberal interpretation of a 42 U.S.C. § 1983 complaint may not supply the **essential elements** of a claim that a plaintiff has failed to plead. *Id.* at 268 (emphasis added).

Despite the unfortunate death of Aaron Patterson, there are no facts supporting the broad conclusory statement that "utiliz[ing] SMU for psychologically disturbed inmates" is cruel and unusual punishment in violation the civil rights of either Aaron or Ms. Patterson under the Eighth or Fourteenth Amendment, nor are there facts supporting a causal connection between the policy and the inmate's suicide. One can only speculate as to what those facts might be. Nevertheless, a complaint containing claims filed against a government official in her individual capacity, pursuant to 42 U.S.C. § 1983  must rise above mere speculation. *Twombly*, 127 S.Ct. 1955.

As previously established, a 42 U.S.C. § 1983 complaint must provide "plausible" grounds for recovery on its face. *Id*. Patterson's complaint fails to reach the plausible level to demonstrate Schriro's affirmative involvement in a deprivation of inmate Patterson's constitutional rights, i.e., that she implemented a policy "so deficient" that it is a "repudiation of constitutional rights".    *See Jeffers* v. *Gomez*, 267 F.3d 895, 914 (9th Cir. 2001). Specifically with regard to Defendant Schriro, the Plaintiff alleges in her Complaint strictly the following:

1

2

3

> Defendant Dora Schriro was at all relevant times the Director of the Arizona Department of Corrections. All actions taken by Defendant Schriro were in the scope and course of her employment with the State of Arizona. She is named in this matter in her individual capacity, as that term is used under 42 U.S.C. § 1983.

4   (Doc. 2.).  Thus, it appears evident on its face that the Complaint fails to state a cause of

5   action against Schriro.

6        As she has only been sued in her individual capacity, Schriro is only liable to

7   Patterson if she "played an affirmative part in the alleged deprivation of constitutional

8   rights." *King*, 814 F.2d at 568.  It is well established in this Circuit that a supervisor is only

9   liable for constitutional violations of his subordinates if the supervisor participated in or

10  directed the violations, or knew of the violations and failed to act to prevent them. *Id.*  It is

11  without question in this Circuit that there is no *respondeat superior* liability under 42 U.S.C.

12  § 1983. *Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 680-81 (9th

13  Cir.1984).

14       As Director of ADOC, the Court finds that for the purpose of 42 U.S.C. §1983,

15  Schriro is a supervisor.  Moreover, there is nothing in the Complaint that contends otherwise.

16  Furthermore, there is nothing in the Complaint that alleges that Schriro had any personal

17  participation with any alleged deprivation of Aaron's civil rights nor played an affirmative

18  part in the alleged deprivation of his constitutional rights.  Plaintiff needed to "allege **facts**,

19  **not simply conclusions**, that show that [Schriro] was personally involved in the deprivation

20  of the [deceased's] civil rights."  *Barren v. Huntington*, 152 F.3d 1193, 94 (9th Cir.

21  1998)(emphasis added).  Liability under 42 U.S.C. § 1983 arises only upon a showing of

22  personal participation by the defendant. *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir.1979).

23  It is evident to this Court from reading the Complaint that Plaintiff  wholly fails to allege

24  conduct remotely resembling affirmative involvement in any constitutional violations on the

25  part of Schriro which allegedly resulted in Aaron's death. Moreover, Patterson completely

26  fails to allege any personal involvement by Schriro.  *Id.*

27

1           **4.     Motion to Amend**

2           Patterson argues that in the event this Court decides to grant Defendant Schriro's Rule

3   12(c) Motion for Judgment on the Pleadings, she should be permitted to amend her

4   Complaint. According to Rule 15, Federal Rules of Civil Procedure, "leave shall be freely

5   given when justice so requires." The Courts generally apply this Rule with "extreme

6   liberality." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)

7   (quoting *Morongo Bank of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)).

8   However, "leave to amend is not to be granted automatically." *Jackson v. Bank of Hawaii*,

9   902 F.2d 1385, 1387 (9th Cir. 1990); *see also Zivkovic v. S. California Edison Co.*, 302 F.3d

10  1080, 1087 (9th Cir. 2002). Courts consider four factors when deciding whether a motion for

11  leave to amend the complaint should be granted: (1) whether the opposing party would be

12  prejudiced by the amendment, (2) whether the plaintiff unduly delayed in proposing the

13  amendments, (3) whether the amendments were proposed in bad faith, and (4) whether the

14  amendments are futile. *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986

15  (9th Cir. 1999); *see also Thornton v. McClatchy Newspapers, Inc.*, 262 F.3d 789, 799 (9th

16  Cir. 2001) (leave to amend "is subject to qualification")(internal quotations omitted);

17  *Jackson*, 902 F.2d at 1388 ("A trial court may deny such a motion [to amend] if permitting

18  an amendment would prejudice the opposing party, produce an undue delay in the litigation,

19  or result in futility for lack of merit.").

20          In the case *sub judice*, the primary focus is on futility. Schriro contends that Plaintiff

21  will be unable to cure the deficiencies in her Complaint regarding Schriro because given the

22  circumstances of the incident that occurred, taken in the light most favorable to Plaintiff,

23  Schriro will nevertheless be protected by qualified immunity.  Thus, the Complaint cannot

24  be saved by amendment.  A motion for leave to amend is properly denied "if it is clear . . .

25  that the complaint could not be saved by any amendment." *Leadsinger, Inc. v. BMG Music*

26

27

1   *Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008) quoting *Polich v. Burlington N., Inc*., 942 F.2d
2   1467, 1472 (9th Cir. 1991).

3           To determine whether granting Patterson leave to amend her Complaint would be
4   futile, the Court must decide whether Schriro is in fact entitled to qualified immunity.  A
5   public official is entitled to qualified immunity if the law governing the official's conduct
6   was *not clearly established*, or if under clearly established law, she could have reasonably
7   believed that her conduct was lawful.   *Jeffers*, 267 F.3d at 910 (emphasis added). As
8   correctly set forth by Defendant, in determining qualified immunity, a court is required to
9   consider the "threshold question: [T]aken in the light most favorable to the party asserting
10  the injury, do the facts alleged show the officer's conduct violated a constitutional right? .
11  . . . [T]he next, sequential step is to ask whether the right was clearly established. This
12  inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not
13  as a broad general proposition." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

14          Patterson alleges[6] that Schriro, as Director of ADOC, implemented a policy of
15  "utilizing SMU for psychologically disturbed inmates" and that such policy is in violation
16  of the Eight Amendment, which led to the suicide of her son Aaron, an inmate in the ADOC.

17          Under the first step of the qualified immunity analysis, the Court looks to Patterson's
18  acknowledgment  that her inmate son was mentally disturbed and suicidal upon his arrival.
19  It is undisputed that he was receiving mental health care at SMU, mental health staff placed
20  him on watch, and appropriate watch intervals were required by the policy in effect.  There
21  is no allegation, nor facts set forth to support any allegation that the ADOC policy was
22  unconstitutional or even ineffectual. Consequently, Patterson is unable to allege any facts in
23  an amended complaint that Schriro implemented a policy "so deficient that the policy itself
24  is a repudiation of constitutional rights and is the moving force of the constitutional

25

26  _____

27          [6] Although this allegation is not clear from the Complaint.

                                    -  11  -

1   violation." *See Jeffers*, 267 F.3d at 914. Schriro's policy provided mental health care and a
2   suicide watch with required watch intervals, it did not repudiate the inmate's right to mental
3   health care. *See Liebe v. Norton*, 157 F.3d 574 (8th Cir. 1998)(jailer who followed prison
4   suicide prevention policy had taken deliberate steps to prevent suicide and was not
5   deliberately indifferent).  The fact that the inmate took affirmative steps to repudiate the
6   policy on his own behalf does not itself render the policy a constitutional violation.

7          Assuming *arguendo* that the Court nevertheless needed to reach the second step of the
8   qualified immunity analysis, Schriro maintains that permitting Plaintiff to file an amended
9   complaint would still be futile because there is no clearly established law that the use of
10  SMU for "psychologically disturbed inmates" violates the Eighth Amendment. The Court
11  agrees.

12  **C.     Conclusion**

13         IT IS HEREBY ORDERED **GRANTING** Defendant Schriro's Motion for Judgment
14  on the Pleadings in her favor and against Plaintiff Barbara Patterson (Doc. 30).

15         IT IS FURTHER ORDERED **DENYING** Defendant Schriro's Motion to Strike
16  Plaintiff's Response to Defendant Schriro's Motion for Judgment on the Pleadings (Doc. 42).

17         IT IS FURTHER ORDERED **DENYING** Plaintiff's request to file an amended
18  complaint.

19         DATED this 18th day of November, 2008.

20
21
22                          Paul G. Rosenblatt
                            United States District Judge
23
24
25
26
27